UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSETTE C. FAISON,

                          Plaintiff,        **No. 6:16-cv-06055(MAT)**
                                        **DECISION AND ORDER**
        -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                          Defendant.

---

## I. Introduction

Josette C. Faison ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

On September 25, 2012, Plaintiff protectively filed an application for DIB and SSI, alleging disability beginning January 11, 2012. After the claim was denied on May 4, 2013, Plaintiff requested a hearing, which was held on June 24, 2014 in New York, New York. Plaintiff appeared with her attorney and testified before Administrative Law Judge Mark Solomon ("the ALJ"). The ALJ issued an unfavorable decision on July 14, 2014. The Appeals Council denied Plaintiff's request for review on

December 2, 2015, making the ALJ's decision became the final decision of the Commissioner. Plaintiff then timely commenced this action.

Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

**III. The ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirements of the Act through June 30, 2014, and has not engaged in substantial gainful activity since January 11, 2012, the alleged onset date. The ALJ determined that Plaintiff has the following severe impairments: history of headaches and history of depression. After finding that Plaintiff did not meet or equal a listed impairment, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") for light work with certain limitations: She must avoid working at unprotected height or with hazardous machinery; she can remember, understand and carry out

simple instructions, and make simple work-related decisions; she can maintain attention and concentration for rote work; and she can maintain a regular schedule and can perform a low stress job which requires only occasional (very little to one-third of the workday) close, interpersonal contact with the general public.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a cleaner, housekeeper, as this work does not require the performance of work-related activities precluded by her RFC. The ALJ did not perform an alternative step five analysis, and entered a finding of not disabled.

**IV. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation

omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

    **A. Errors in the Severity Determination and Failure to Apply the Special Technique**

Plaintiff's arguments for reversal and remand pertain to the ALJ's finding at step two that Plaintiff only has the "severe" impairments of a history of headaches and a history of depression. (T.16). Plaintiff argues that this finding ignores the diagnosis, by consultative psychological examiner Dr. Christine Ransom, of probable borderline intellectual functioning. (T.279). Plaintiff contends that this condition needed to be included as a "severe" impairment by the ALJ at step two. According to Plaintiff, Dr. Ransom's diagnosis should have prompted the ALJ to develop the record by requesting intelligence testing. The Commissioner argues that any step two error was harmless because the ALJ found other "severe" impairments and proceeded through the sequential evaluation.

The Commissioner's Regulations define a "severe" impairment as one that "significantly limits" a claimant's ability to perform "basic work activities," which in turn are defined as "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, [etc.]", "[c]apacities for

seeing, hearing, and speaking," and "[u]nderstanding, carrying out, and remembering simple instructions." 20 C.F.R. §§ 404.1521(b), 416.921(b). The Second Circuit has held that step two's "severity" requirement is de minimis, meant only to screen out the weakest of claims. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) ("Since the [Supreme] Court's decision in [Bowen v.] Yuckert, [482 U.S. 137 (1987)] at least seven circuits have followed Justice O'Connor's lead and held that Step Two may do no more than screen out de minimis claims.") (collecting cases).

As Plaintiff observes, Courts in this Circuit frequently remand for a renewed severity determination when an ALJ has made an error at step two. See McHugh v. Astrue, No. 11-CV-00578 MAT, 2013 WL 4015093, at *9 (W.D.N.Y. Aug. 6, 2013) ("the ALJ erred at step two in finding that [the claimant]'s epilepsy was not a seizure disorder and in ignoring [the claimant]'s migraine headaches. The present record strongly suggests that [the claimant]'s seizure disorder and migraine headaches are 'severe impairments' for purposes of step two which, as the Second Circuit has emphasized, is not a demanding standard.") (collecting cases); see also, e.g., Dailey v. Colvin, No. 1:14-CV-00841-MAT, 2017 WL 2569683, at *3 (W.D.N.Y. June 14, 2017); Taylor v. Astrue, No. 6:11-cv-588(GLS), 2012 WL 1415410, at *2 (N.D.N.Y. Apr. 24, 2012).

Cognitive disorders such as borderline intellectual functioning and learning disabilities "fall[ ] under the rubric of

-5-

mental impairments[.]" Booker v. Astrue, No. 1:07-CV-646GLS, 2011 WL 3735808, at *3 (N.D.N.Y. Aug. 24, 2011). After the ALJ determines that the claimant has a medically determinable mental impairment, the ALJ must perform an analysis referred to in the Regulations as the "special technique," which involves rating the degree of functional limitation in four categories: 1) activities of daily living; 2) social functioning; 3) concentration, persistence and pace; and 4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The application of the "special technique" is *required* at "the second and third steps of the five step framework." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). The ALJ's written decision must "reflect application of the [special] technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" Id. (quoting 20 C.F.R. § 404.1520a(e)(2)); see also 20 C.F.R. § 416.920a(e)(2). Thus, it is not sufficient merely to discuss the functional limitations in the context of claimant's residual functional capacity. Failure to apply the special technique with regard to a cognitive impairment such as borderline intellectual functioning has been found to be reversible error. See, e.g., Kennerson v. Astrue, No. 10-CV-6591 MAT, 2012 WL 3204055, at *15 (W.D.N.Y. Aug. 3, 2012)(finding that "[u]nless the ALJ has performed the [special technique] analysis, he or she has not adequately considered the entire record when determining the

severity of the claimant's impairments"; although ALJ did find that claimant had a severe mental impairment (a learning disability), it did not appear that the ALJ employed the special technique at the second and third steps of the five-step sequential evaluation, as required; this was an alternative basis for reversal) (citing Moore v. Astrue, Civil No. 3:10-CV-0709 (CFD)(TPS), 2010 WL 4976756, at *3 (D. Conn. Dec. 2, 2010)); Isaacs v. Astrue, No. 07-CV-257, 2009 WL 528252, at *10 (W.D.N.Y. Mar. 2, 2009) (reversing because the ALJ's "assessment fails to account for [claimant]'s significant non-exertional limitations, including his borderline intellectual functioning") (citing Swope v. Barnhart, 436 F.3d 1023, 1025 (8th Cir. 2006) (stating that "borderline intellectual functioning, if supported by the record . . . is a significant non-exertional impairment that must be considered by a vocational expert")).

Here, there was sufficient evidence in the record to warrant the ALJ to at least consider Dr. Ransom's diagnosis of probable borderline intellectual functioning at step two. During her mental status examination, Dr. Ransom noted that Plaintiff's motor behavior was "[l]ethargic, and her eye contact was "[d]owncast." (T.278). Her "[s]peech was slow and halting" with a "moderately dysphoric" "quality of voice[.]" (Id.). Dr. Ransom observed that her "[e]xpressive and receptive language skills were simplified but adequate to complete the evaluation without difficulty." (Id.). Plaintiff's attention and concentration were "moderately impaired"

-7-

due to "depression and limited intellectual capacity." (Id.). Plaintiff's remote memory was intact, but her immediate memory was "moderately impaired." (Id.). Dr. Ransom stated that Plaintiff's memory functions appeared to be impaired by depression and limited intellectual capacity." (T.279). With regard to cognitive functioning, Dr. Ransom opined that Plaintiff's "[i]ntellectual functioning appeared to be in the borderline range" and her "[g]eneral fund of information was somewhat limited." (Id.). According to Dr. Ransom, Plaintiff "does not appear capable of managing funds due to limited intellectual capacity" and "should receive assistance in managing money." (Id.). Dr. Ransom diagnosed Plaintiff with "[m]ajor depressive disorder, currently moderate" and "[p]robable borderline intellectual capacity." (Id.).

Dr. Ransom's finding of probable borderline intellectual capacity is supported by other evidence in the record. For instance, Plaintiff had been placed in special education classes in school; she only completed ninth grade and did not obtain an equivalency diploma. (T.31, 277). Plaintiff's handwritten submissions are not what one would expect from a ninth grader. For instance, her request for a hearing reads as follows: "I fill [sic] its [sic] not fare [sic] because [sic] hurt my self [sic] on my Job and i [sic] ask permisson [sic] to go to hospatial [sic] Becouse [sic] i [sic] was hurt [sic] am still hurt. I have a lot of problems [and] pain all the time." (T.9). The Court notes that in

the words "fare" and "of," the letter "f" was written backwards. (T.9).

Notwithstanding this corroborative evidence of Plaintiff's limited intellectual capabilities, the ALJ did not include Dr. Ransom's diagnosis of probable borderline intellectual functioning at step two. Furthermore, the ALJ did not perform the special technique as required by the Regulations and clear Second Circuit precedent. The Commissioner argues that any error was harmless because the ALJ proceeded with the remainder of the sequential evaluation process and assessed limitations in the RFC that fully accounted for Plaintiff's mental functioning. The Court disagrees.

Although the Second Circuit in Kohler left open the possibility that an ALJ's failure to adhere to the regulation's special technique could be harmless, under the facts presented by the claimant in that case, remand was necessary because the ALJ's failure to adhere to the Regulations frustrated meaningful appellate review. Kohler, 546 F.3d at 267. The Circuit pointed to two particular areas of concern. First, the panel could not determine whether there was substantial evidence for the ALJ's decision in the absence of specific findings regarding the claimant's degree of limitation in the four functional areas by which disabling mental conditions are rated. Id. at 267–68. Second, the ALJ in Kohler focused on the claimant's RFC and not the four

functional areas required by the Regulations in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). This led the Circuit to conclude it was "not clear whether the ALJ adequately considered the entire record when determining the severity of Kohler's impairment, or whether he might have found it to equal the severity of a listed condition had he followed the regulations and made specific findings regarding Kohler's degree of limitation in each functional area. It also [was] not clear whether the ALJ would have arrived at the same conclusion regarding Kohler's residual functional capacity to perform work had he adhered to the regulations." Id. at 268. Such is the case here. Indeed, especially in the realm of borderline intellectual functioning and learning disabilities, courts have found the harmless error doctrine inapplicable. See, e.g., Nicola v. Astrue, 480 F.3d 885, 887 (8th Cir. 2007) (failure of ALJ to analyze disability claimant's borderline intellectual functioning using the special technique was in error even where other impairments were found to be severe at step two); Howard v. Comm'r of Soc. Sec., 203 F. Supp. 3d 282, 298 (W.D.N.Y. 2016) (reversing where ALJ did not address claimant's alleged borderline intellectual functioning impairment at step two or step three of the disability analysis, and did not apply special technique to borderline intellectual functioning; court could not say that the ALJ properly assessed a combination of claimant's impairments, severe and non-severe, during the remaining steps) (citing Booker,

2011 WL 3735808, at *4 (The "ALJ's other findings [must] show that the proper legal standards were applied and that all of [the claimant's] impairments were properly considered at all of the subsequent steps.")).

Although the ALJ did, as part of his step three analysis, perform the second step[1] of the special technique, this assessment was solely in relation to whether Plaintiff's depression met the criteria for Listing 12.04 (Affective Disorders). This assessment arguably could draw from the same sources in the record and be similar to what the ALJ would have found, had he actually performed the special technique for Plaintiff's probable borderline intellectual functioning. However, this would require the Court to engage in impermissible speculation and <u>post hoc</u> rationalizations for the ALJ's decision. <u>See</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'") (quoting <u>Burlington Truck Lines, Inc. v. United States</u>, 371 U.S. 156, 168 (1962)).

---

[1] The special technique has two steps. It "requires a reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.'" <u>Kohler</u>, 546 F.3d at 265–66 (quoting 20 C.F.R. § 404.1520a(b)(1)); <u>see also</u> 20 C.F.R. § 416.1520a(b)(1). "If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' . . . which specifies four broad functional areas." <u>Id.</u> at 266 (quoting 20 C.F.R. § 404.1520a(b)(2); <u>see also</u> 20 C.F.R. § 416.1520a(b)(2). These areas are as follows: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." <u>Id.</u> (citing 20 C.F.R. § 404.1520a(c)(3)); <u>see also</u> 20 C.F.R § 416.920a (c)(3).

The Court cannot say that the ALJ's errors at step two and three were harmless, and therefore remand is required. See, e.g., Howard, 203 F. Supp.3d at 298 (where ALJ did not address claimant's alleged borderline intellectual functioning impairment at step two or step three, court could not say that ALJ properly assessed a combination of claimant's impairments, severe and non-severe, during the remaining steps) (citing Booker, 2011 WL 3735808, at *4 ("[The] ALJ's other findings [must] show that the proper legal standards were applied and that all of [the claimant's] impairments were properly considered at all of the subsequent steps.")).

**B. Failure to Develop the Record Regarding Plaintiff's Intellectual Functioning**

Development of the record is required to more precisely assess Plaintiff's intellectual functioning. The Court recognizes that Dr. Ransom's diagnosis regarding Plaintiff's borderline intellectual functioning is qualified by the term "probable." However, that does not give the ALJ license to disregard it. "An ALJ has the discretion to order a consultative intelligence exam to develop the record when the ALJ determines that he or she cannot get the information needed to form a conclusion based solely on the medical sources within the record." Dufresne v. Astrue, No. 5:12-CV-00049 MAD, 2013 WL 1296376, at *7 (N.D.N.Y. Mar. 8, 2013), report and recommendation adopted, No. 5:12-CV-0049 MAD/TWD, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013 (citing 20 C.F.R. §§ 404.1519a(a), 416.919a). In the previous section of this

opinion, the Court outlined some of the evidence in the record supporting Dr. Ransom's diagnosis of probable borderline intellectual functioning. The Commissioner has pointed to other items of evidence in the record tending to support the ALJ's finding that Plaintiff can perform simple, rote work. However, the Commissioner's arguments in this regard amount to post-hoc rationalizations for the ALJ's decision; the ALJ did not rely on this evidence or articulate such reasoning at the time his analysis. Given the evidence already in the record concerning Plaintiff's cognitive impairments, Dr. Ransom's diagnosis of probable borderline intellectual functioning should have prompted the ALJ to develop the record by ordering a consultative examination and/or intelligence testing. See Dufresne v. Astrue, 2013 WL 1296376, at *8 ("Since the record contains evidence of a cognitive impairment, with conflicting evidence as to his abilities, the ALJ should have ordered a consultative intelligence test in order to clarify [the claimant]'s intelligence level and properly render a decision on whether [the claimant]'s mental impairment is severe."). On remand, the ALJ is directed to have Plaintiff undergo a consultative evaluation and/or intelligence testing.

**VI. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law, and

that remand is required. Defendant's Motion for Judgment on the Pleadings is denied, and Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this decision.

**SO ORDERED.**

          **S/Michael A. Telesca**

          _____
          HONORABLE MICHAEL A. TELESCA
          United States District Judge

Dated: August 4, 2017
     Rochester, New York